UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

REPORT AND RECOMMENDATION

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

Barbara R. Burns,

                              Plaintiff,

     vs.

Office of Attorney General,
State of Minnesota and its
inferior political subdivisions;
City of Apple Valley, its
employees and agents; Dakota
County, its employees and
agents; City of Richfield; City
of Richfield Police Department;
Thomas FitzHenry; Hennepin
County, its employees and agents,
and Steven Sutton,

                    Defendants.        Civ. No. 05-858 (PJS/RLE)

     \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the parties' cross-Motions for Summary Judgment.  For

these purposes, the Plaintiff appears <u>pro se</u>; the Defendants County of Hennepin, and

Steven Sutton ("Sutton")[1](collectively, the "Hennepin County Defendants"), appear

by Toni A. Beitz, Senior Assistant Hennepin County Attorney; the Defendant County

of Dakota ("Dakota County") appears by Andrea G. White, Assistant Dakota County

Attorney; and the Defendants City of Apple Valley, Thomas Fitzhenry ("Fitzhenry"),

the City of Richfield Police Department, and the City of Richfield (collectively, "the

Richfield and Apple Valley Defendants"), appear by Jason M. Hiveley, Esq.

Having reviewed the parties' written submissions, and deeming oral argument

unnecessary, we recommend that the Defendants' Motions for Summary Judgment be

granted as to all of the Plaintiff's Federal claims, and that the Plaintiff's Motion for

Summary be denied.   We also recommend that the Court decline to exercise

supplemental jurisdiction over the Plaintiff's State law claims, and that those claims

be dismissed without prejudice.

## II.  <u>Factual and Procedural History</u>

The Plaintiff's Complaint arises from her arrest and detention on November 10,

2003, in Richfield, Minnesota.  See, <u>Amended Complaint</u>, <u>Docket No. 11-10</u>.  The

---

[1]The Plaintiff has misspelled Sutton's name as "Sutten," and spells the Defendant
Thomas Fitzhenry as "FitzHenry."  We employ the proper spellings in this Report.

Plaintiff alleges that her arrest and detention violated Title 42 U.S.C. §1983, the

Fourth and Fourteenth Amendments, the Minnesota Government Data Practice Act,

Minnesota Statutes Section 13.01, et seq. ("MGDPA"), and she also alleges a variety

of State tort claims.   Id.   As pertinent to the Motions before us, and shorn of their

irrelevancies, the operative facts are straightforward.[2]

---

[2]After thoroughly parsing the evidence of Record, we find that there are no genuine issues of material fact that would stave the grant of Summary Judgment.  This is not to say that the Plaintiff has not quarreled with the Defendants' Affidavits, but it is to say that her quarrels are unsupported by competent and admissible evidence.  Apart from being treatises on the irrelevant, her Declarations are conclusory, and suffer, we find fatally, from hearsay, conjecture, suspicion, surmise, and personal invective.  See, Ballard v. Heineman, 548 F.3d 1132, 1136 (8th Cir. 2008)("[C]onclusory affidavits devoid of specific factual allegations rebutting the moving party's evidence cannot defeat a summary judgment motion."), citing Allen v. Entergy Corp., 181 F.3d 902, 906 (8th Cir. 1999), cert. denied 528 U.S. 1063 (1999); Logan v. Liberty Healthcare Corp., 416 F.3d 877, 882 (8th Cir. 2005), cert. denied 547 U.S. 1076(""However, '[c]onclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment."), quoting Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998); see also, Luciano v. Monfort, Inc., 259 F.3d 906, 910 (8th Cir. 2001)("'We have described general statements in affidavits and deposition testimony similar to [Burns' claims] as conclusory and have determined that such statements, standing alone, are insufficient to withstand a properly-supported motion for summary judgment.'"), citing Helfter v. United Parcel Service, Inc., 115 F.3d 613, 616 (8th Cir. 1997), citing, in turn, Berg v. Bruce, 112 F.3d 322, 327-28 (8th Cir. 1997), and Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 485 (8th Cir. 1997).

As a consequence, even though we are obligated to construe the facts in a light most favorable to the Plaintiff, insofar as we consider the Defendants' Motions for Summary Judgment, that construction is not invoked when the Plaintiff offers no more

(continued...)

On August 4, 1999, after receiving numerous complaints, Apple Valley's Associate Planner inspected the Plaintiff's property, and confirmed the presence of an inoperable vehicle, and discarded carpet.  See, <u>Affidavit of Toni Beitz ("Beitz Aff.")</u>, <u>Docket No. 290</u>, Exhibit I at 3.  On August 11, 1999, Apple Valley sent the Plaintiff a letter advising her that she was in violation of the City Code.  <u>Id.</u>  The Plaintiff was also notified that another inspection would occur on August 23, 1999.  <u>Id.</u>  On August 22, 1999, Apple Valley received a request from Renee A. DeFina, the Plaintiff's mother, for an extension, <u>id.</u>, and Apple Valley agreed to a one-week extension, and set the date for compliance as September 8, 1999.  <u>Id.</u>  Apple Valley inspected the Plaintiff's property again, and on September 16, 1999, sent her a letter informing her of the noted violations, and set the date for a final inspection as September 27, 1999.  <u>Id.</u>

---

[2](...continued)
than her unbridled fantasy as to what she wants the facts to be.  See, <u>Fischer v. Andersen Corp.</u>, 483 F.3d 553, 557 n. 6 (8th Cir. 2007)("[T]o withstand summary judgment, the non-moving party 'must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture or fantasy."), quoting <u>Moody v. St. Charles County</u>, 23 F.3d 1410, 1412 (8th Cir. 1994); <u>Rule 56(e)(1), Federal Rules of Civil Procedure</u> ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

On September 27, 1999, the inspection revealed that the Plaintiff had failed to

bring the property into compliance.  Id.  On November 18, 1999, a Summons was

issued for the Plaintiff to appear in the State Court for Dakota County on December

16, 1999.  Id. at 5.  Much later, on August 8, 2001, and after the Plaintiff had failed

to attend a Pretrial Hearing, a Bench Warrant was issued.  See,  Docket No. 285, at 5;

Beitz Aff., supra, Exhibit J.  On August 21, 2003, after reviewing the file, a State

Court Judge concluded that the Warrant should remain active.  See, Docket No. 285,

at 5; Beitz Aff., supra, Exhibit K; Exhibit L.[3]

---

[3]Apparently of the view that a falsehood repeated sufficiently is rendered true, the Plaintiff persists in her assertion that the Warrant in question was ineffective because the State Court proceeding was removed to this Federal Court.  The assertion was initially rejected by then Chief Judge Paul A. Magnuson in a letter dated December 30, 1999, in which the Plaintiff was informed that she had not "made a proper filing and therefore there is no pending litigation in which you are a party in the United States District Court for the District of Minnesota."  Burns v. City of Apple Valley, 2001 WL 670833 at *4 (D. Minn., June 13, 2001), appeal dismissed, 30 Fed.Appx. 670 (8th Cir. 2002), cert denied, 537 U.S. 1051 (2002).

Subsequent to Judge Magnuson's rejection, the Plaintiff sought a preliminary injunction in the nature of an Order dismissing the same State Court criminal action that she contended that she had removed to this Court.  The District Court, the Honorable John R. Tunheim presiding, again rejected that claim. Id. ("Thus, because the state [criminal] prosecution was not properly removed to federal court in November 1999, plaintiff's motion to dismiss [t]he case is denied," and therefore, "[t]wo separate and concurrent lawsuits are thus pending at this time -- the state criminal action in the Dakota County District Court for charged violations of the city

(continued...)

On November 10, 2003, the Plaintiff was stopped in Richfield, Minnesota, by

Richfield Police Officer Fitzhenry, for failing to stop at a flashing traffic light.  See,

Amended Complaint, supra at ¶¶ 6-7; Affidavit of Jason M. Hiveley ("Hiveley Aff."),

---

[3](...continued)
ordinance and this §1983 civil rights lawsuit filed in December 2000.").  Ultimately, the District Court granted the City of Apple Valley Summary Judgment on the Plaintiff's then Section 1983 action against it, and again dismissed the Plaintiff's renewed reiteration that the State criminal case had been removed, see, Burns v. City of Apple Valley, Civ. No. 00-2638, Memorandum Opinion and Order of September 25, 2001, Docket No. 95, at p. 4, and granted the City attorneys' fees in the amount of $5,600.00, and restricted the Plaintiff's access to this Court, because her claims were found to frivolous, unreasonable, or groundless.  Id., Memorandum Opinion and Order of March 31, 2003, Docket No. 113, at pp. 3-4.  As noted, the Plaintiff exhausted, unsuccessfully, all of her appeals from those Orders.

Plainly, the Plaintiff's renewed assertion, here, that the State Court criminal proceeding had been removed to this Court, thereby vitiating the validity of the Warrant that prompted her arrest by Fitzhenry, is precluded by the doctrine of collateral estoppel.  "Collateral estoppel or issue preclusion has five basic elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.").  Olsen v. Mukasey, 541 F.3d 827, 830-31 (8th Cir. 2008) petition for cert. filed 77 USLW 3369 (December 8, 2008), citing Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007), citing, in turn, Anderson v. Genuine Parts Co., Inc., 128 F.3d 1267, 1273 (8th Cir. 1997).  Given the identity of the claims, and the finality of the prior rulings, we are not empowered, as the Plaintiff invites, to treat the earlier rejection of her arguments as a nullity.  Accordingly, the State Court Warrant was not invalidated on this ground.

Docket No. 296, Exhibit A at 18:4-20:18; 22:18-23:19; Corrected Affidavit of Thomas Fitzhenry ("Fitzhenry Aff."), Docket No. 299, at ¶¶ 3-5.  In the process of issuing the Plaintiff a citation, Fitzhenry ran her Minnesota driver's license, and discovered that the Plaintiff had a Warrant issued from Dakota County.[4]  See, Fitzhenry Aff., supra at ¶6.  Fitzhenry checked with his dispatcher in order to determine whether the Warrant was active, and in response, he received a teletype confirming that the Warrant was active.  See, Affidavit of Shona Murphy ("Murphy Aff."), Docket No. 283, Exhibit 2; Fitzhenry Aff., supra at ¶ 6.

Upon receiving the teletype, Fitzhenry contacted Hennepin County in order to ascertain whether the Plaintiff could be transported to Hennepin County's Adult Detention Center (the "ADC") and, after Hennepin County had independently confirmed the validity of the Warrant, Hennepin County agreed to house the Plaintiff. See, Affidavit of Susan Anderson ("Anderson Aff."), Docket No. 288, Exhibit A, Exhibit B; Fitzhenry Aff., supra at ¶ 6. Fitzhenry approached the Plaintiff's car, and informed her that there was a Warrant issued by Dakota County for her arrest.  See, Fitzhenry Aff., supra at ¶7.  The Plaintiff responded that the Warrant was no longer

---

[4]The Plaintiff does not know whether she had a New Jersey, or a Minnesota driver's license at the time of the traffic stop.  See, Hively Aff., supra, Exhibit A at 23:20-24:19.

active.[5]  See, Hiveley Aff., supra, Exhibit A at 29:4-9;  Fitzhenry Aff., supra at ¶7.

After Fitzhenry repeated that the Plaintiff had a Warrant, she became verbally

uncooperative.  See, Fitzhenry Aff., supra at ¶7.  The Plaintiff also requested that

Fitzhenry afford her a Miranda warning.  See, Hiveley Aff., supra, Exhibit A at 29:17-

20; Fitzhenry Aff., supra at ¶8.

Fitzhenry repeatedly asked the Plaintiff to get out of her vehicle, but she stated

that she would not exit the vehicle until she had an opportunity to speak with her

attorney.[6]  See, Hiveley Aff., supra, Exhibit A at 29:7-9; Fitzhenry Aff., supra, ¶9.

Fitzhenry then informed the Plaintiff that she was under arrest, and he removed her

from her vehicle.  See, Fitzhenry Aff., supra, ¶9.  After removing the Plaintiff, she

grabbed her purse, and refused to comply with Fitzhenry's requests that she hand the

purse over to him.  Id.  Fitzhenry then forced the Plaintiff to release the purse.  See,

Hiveley Aff., supra, Exhibit A at 32:3-7; 32:15-22.  The Plaintiff then refused to get

---

[5]The Plaintiff asserts that she told Fitzhenry that her lawyer had "quashed" the Warrant.  See, Hiveley Aff., supra, Exhibit A at 29:4-9.  Fitzhenry claims that the Plaintiff told him that the Warrant had been resolved in Federal Court.  See, Fitzhenry Aff., supra at ¶7.  We find, on the basis of the competent evidence of Record, that the Warrant was never quashed, nor was it resolved in Federal Court.

[6]The Plaintiff has also repeatedly asserted that Fitzhenry claimed to be a lawyer. See, Hiveley Aff., supra, Exhibit A at 27:1-2;  27:17-20;  31:16-17.  Even accepted as true, this assertion has no bearing on the issues we resolve as a matter of law.

into Fitzhenry's squad car, until she was informed that, if she did not get in voluntarily, then Fitzhenry would have to handcuff her.[7]  See, <u>Fitzhenry Aff.</u>, supra at ¶9.  Once in the vehicle, Fitzhenry placed the Plaintiff's purse in the passenger seat, and called a tow company.  See, <u>Hiveley Aff.</u>, supra, Exhibit A at 44:5-8; <u>Fitzhenry Aff.</u>, supra at ¶10.  After calling the tow company, Fitzhenry transported the Plaintiff to the ADC.  See, <u>Hiveley Aff.</u>, supra, Exhibit A at 49:24-50:1; <u>Fitzhenry Aff.</u>, supra at ¶11.

Upon arriving at the ADC, Fitzhenry placed the Plaintiff into the ADC's custody, gave the ADC's staff the Plaintiff's purse, and informed them that he had not inventoried its contents.  See, <u>Hiveley Aff.</u>, supra, Exhibit A at 51:4-14; 56:8-12; <u>Fitzhenry Aff.</u>, supra at ¶12.  Shortly thereafter, Fitzhenry left the ADC.  See, <u>Hiveley Aff.</u>, supra, Exhibit A at 56:19-23.  The Plaintiff was brought inside the ADC, where she refused to answer any questions, including routine booking, safety, and medical questions.  See, <u>Affidavit of Scott Larson ("Larson Aff.")</u>, <u>Docket No. 289</u>, Exhibit E at 1; <u>Beitz Aff.</u>, supra, Exhibit M at 134:5-17.  Thereafter, the Plaintiff was placed in a holding cell at approximately 10:13 o'clock a.m..  See, <u>Larson Aff.</u>, supra, Exhibit

---

[7]The Plaintiff believes that Fitzhenry handcuffed her.  See, <u>Hiveley Aff.</u>, supra, Exhibit A at 33:17-22; 54:20-22.

E at 1.  During that same time, the ADC staff inventoried the contents of the Plaintiff's purse.  See, <u>Larson Aff.</u>, supra, Exhibit F.  While in the holding cell, the Plaintiff was frequently checked on, and she had contact with ADC staff, and medical personnel.  See, <u>Larson Aff.</u>, supra, Exhibit E at 1-3.

At approximately 1:36 o'clock p.m., the Plaintiff agreed to complete the booking process, but under protest.  <u>Id.</u> at 3. Once the booking was complete, the Plaintiff was provided access to a telephone.  <u>Id.</u>  Part of the booking process includes taking the detainee's fingerprints in order to analyze them so as to confirm an identity.  See, <u>Anderson Aff.</u>, supra at ¶8.  The ADC personnel also checked other databases in order to assure that the Plaintiff had no other pending Warrants.  <u>Id.</u>  Only after that Warrant check is completed will bond, or bail money, be accepted by the ADC.  <u>Id.</u> at ¶9.  The Plaintiff's Warrant check was finished at approximately 6:00 o'clock p.m.  See, <u>Anderson Aff.</u>, supra at ¶ 8;  <u>Larson Aff.</u>, supra, Exhibit E at 3.

Although the ADC does not keep records of when bail money is received, the Plaintiff's release paper work was partially completed by 9:48 o'clock p.m.  See, <u>Anderson Aff.</u>, supra at ¶¶11-12.  At 10:17 o'clock p.m., the final Warrant checks were completed, and the Plaintiff was cleared for release.  See, <u>Anderson Aff.</u>, supra at ¶15; <u>Larson Aff.</u>, supra, Exhibit E at 3.  At approximately 10:55 o'clock p.m., the

- 10 -

Plaintiff's purse and belongings were released to her.  See, <u>Larson Aff.</u>, supra, Exhibit

E at 3, Exhibit G.  As part of that release process, the ADC personnel contacted

Dakota County in order to arrange an appearance date, and thereafter, they prepared

a Release Receipt so as to confirm the date of that appearance.[8]  See, <u>Anderson Aff.</u>,

supra at ¶13; Exhibit C.  After some initial protest, the Plaintiff signed the Release

Receipt.[9]  See, <u>Anderson Aff.</u>, supra, Exhibit C;  <u>Larson Aff.</u>, supra, Exhibit E at 3-4.

At approximately 11:30 o'clock p.m., the Plaintiff was released from the ADC.[10]  See,

<u>Larson Aff.</u>, supra, Exhibit E at 4.

On or about December 1, 2003, the Plaintiff received a letter advertisement

from an attorney.  See, <u>Amended Complaint</u>, supra at ¶14.  The advertisement noted

that the attorney had discovered the ticket, or the complaint for a violation of the law,

from the Court records.  See, <u>Beitz Aff.</u>, supra, Exhibit N.  The Plaintiff contacted the

---

[8] Dakota County was notified that the Plaintiff had submitted a one thousand dollar ($1000.00) bond, and that she was scheduled for a Court appearance on November 21, 2003, at 8:30 o'clock a.m., in Apple Valley.   See, <u>Anderson Aff.</u>, supra, Exhibit C.

[9] The Plaintiff denies that the signature on that document is her own.  See, <u>Plaintiff's Supplemental Motion ("Supplemental Motion")</u>, <u>Docket No. 314</u>, at ¶48.

[10] The Plaintiff claims that she was released from the ADC at approximately 12:30 o'clock a.m.  See, <u>Amended Complaint</u>, supra at ¶13.

attorney in order to ascertain where he had received that information, and she was told that it came from Hennepin County.  Id., Exhibit M at 169:17-170:5.

Given this factual backdrop, the parties have now filed cross-Motions for Summary Judgment.  In their Motions, all the Defendants contend that the Plaintiff has not demonstrated any constitutional violations, and further, that she has failed to proffer sufficient evidence of any alleged State tort.   See, Dakota County's Memorandum in Support, Docket No. 281, at 6-11; Hennepin County's Memorandum in Support, Docket No. 287, at 5-10, 12-15, 16-18; Apple Valley and Richfield Defendants' Memorandum in Support, Docket No. 295, at 5-8, 25-33.  The Richfield and Apple Valley Defendants further assert that Fitzhenry is entitled to statutory and qualified immunity; that the Plaintiff failed to sue Fitzhenry in his individual capacity; and that the City of Richfield's Police Department should be dismissed because it is not a legal entity that is subject to suit.  See, Apple Valley and Richfield Defendants' Memorandum in Support, supra at 9-25, 34-37.[11]

_____

[11]We agree that the City of Richfield Police Department is not a separate legal entity, and that its liability is the same as that of the municipality involved -- namely, the City of Richfield.  See, e.g., Tilson v. Forrest City Police Dep't, 28 F.3d 802, 807 (8th Cir. 1994)("'For the [Police] Department to be liable under §1983 for a constitutional violation, a claimant must show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

(continued...)

Dakota County also maintains that it is entitled to statutory immunity as to the Plaintiff's claim that it violated the Minnesota Data Practices Act in the handling of the Warrant, but that, in any event, the Court should dismiss her State law claims for lack of supplemental jurisdiction. See, Dakota County Memorandum in Support, supra at 10-12. Lastly, the Hennepin County Defendants contend that Sutton is entitled to Summary Judgment because the Plaintiff failed to sue him in his individual capacity, and that Hennepin County is entitled to statutory immunity for any alleged

---

[11](...continued)

decision officially adopted and promulgated by [the Department] or that a constitutional deprivation [was] visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'"), quoting Marchant v. City of Little Rock, 741 F.2d 201 (8th Cir. 1984); In re Scott County Master Docket, 672 F. Supp. 1152, 1163 n. 1 (D. Minn. 1987).

Although we have no reason to believe that the City of Richfield's Police Department is a legal entity subject to suit, a Monell claim would still be legally cognizable against the City of Richfield. See, De La Garza v. Kandiyohi County Jail, Correctional Institution, 18 Fed.Appx. 436, 437 (8th Cir., August 30, 2001)("While we agree with the district court's conclusion, see Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ('Sheriff's departments and police departments are not usually considered legal entities subject to suit'); In re Scott Master Docket, 672 F. Supp. 1152, 1163 n. 1 (D. Minn. 1987)(sheriff's department is not legal entity subject to suit), aff'd, Myers v. Scott County, 868 F.2d 1017 (8th Cir. 1989), we modify the dismissal to be without prejudice so that [plaintiff] may refile his complaint to name a suable entity or individual."). Here, the Plaintiff has named the City of Richfield as a Defendant, and therefore, we recommend that this claim against the Police Department be dismissed with prejudice.

- 13 -

failure to train or discipline the ADC personnel.  See, <u>Hennepin County Memorandum in Support</u>, supra at 11, 15-16.

In her Motion for Summary Judgment, the Plaintiff seeks Judgment on all of her claims, and opposes the Defendants' Motions.  We address the parties' arguments in turn.

### III.  <u>Discussion</u>

A.    <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Wallace v. DTG Operations, Inc.</u>, 442 F.3d 1112, 1118 (8th Cir. 2006), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing <u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003); <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>,

328 F.3d 1020, 1023 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also,

Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar

Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center,

Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case

because "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp.

v. Catrett, supra at 323;  see also, Sallis v. University of Minnesota, 408 F.3d 470, 474

(8th Cir. 2005);   Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell

Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

  B. Legal Analysis.  Our analysis commences with the question of whether

the Plaintiff sued Fitzhenry, and Sutton, in their individual capacities.

  1. The Capacities of Sutton and Fitzhenry.  In order to sustain a claim

under Section 1983, a plaintiff must show that the named defendants were directly,

and personally, involved in the alleged illegal acts, or in the policy decision that

created the unlawful context for those acts.  See, e.g., Beck v. LaFleur, 257 F.3d 764,

766 (8th Cir. 2001); McNair v. Norris, 2000 WL 490709 at *1 (8th Cir., April 27,

2000); Martin v. Sergeant, 780 F.2d 1334, 1337 (8th Cir. 1985).  Accordingly, the

doctrine of respondeat superior -- or vicarious liability -- is not available to a Section

1983 plaintiff.  See, e.g., Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978);

Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Rasmussen v. Larson, 863 F.2d 603, 605 (8th Cir. 1988).

In an action under Section 1983, a public servant may be sued in an official, or in an individual capacity, or in both.  See, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).  However, "[i]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." Id., citing Artis v. Francis Howell North Band Booster Ass'n, Inc., 161 F.3d 1178, 1182 (8th Cir. 1998)("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity."); Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995)(same).

In the Plaintiff's Amended Complaint, she alleges that Sutton "was at all relevant times an employee of Defendant Hennepin County [, who] * * * acted under color of law and authority as an officer of Defendant Hennepin County." Amended Complaint, at ¶6.  Similarly, she alleges that Fitzhenry "was at all relevant times an employee of Defendant City of Richfield [, who] * * * acted under color of law and authority as an officer of Defendant City of Richfield."  Apart from those assertions,

CASE 0:05-cv-00858-PJS-RLE   Document 334   Filed 02/04/09   Page 18 of 52

there is no allegation in the Plaintiff's Amended Complaint that she is suing Sutton,

or Fitzhenry, in their individual capacities, and accordingly, they are sued solely in

their official capacities.   See, <u>Johnson v. Outboard Marine Corp.</u>, supra at 535;

<u>Andrus v. Arkansas</u>, 197 F.3d 953, 955 (8th Cir. 1999)("In actions against officers,

specific pleading of individual capacity is required to put public officials on notice

that they will be exposed to personal liability."); <u>Egerdahl v. Hibbing Community

College</u>, supra at 619.   Therefore, any Federal claims that have been alleged against

Sutton, and Fitzhenry, in their individual capacities, necessarily fail, and they are

entitled to Summary Judgment on those claims.

       2.    <u>The Plaintiff's Constitutional Claims</u>.   The Plaintiff claims that

her arrest, and her subsequent detention, violated her Fourth and Fourteenth

Amendment rights.   Count One of her Amended Complaint contends that the

Defendants violated the Fourth Amendment right of citizens to be secure in their

persons.   See, <u>Amended Complaint</u>, supra at 7.   Count Two alleges that the

Defendants violated Section 1983 because of the Plaintiff's assertedly false arrest, and

false imprisonment.   <u>Id.</u> at 7-8. Count Three claims that the Defendants violated the

Plaintiff's Fourth and Fourteenth Amendment right to be secure in her person, free of

unlawful seizures, arrests, and the use of excessive force, as well as violations of her

- 18 -

right to due process, and the equal protection of the laws.  Id. at 8-9.  Construed

liberally, all three claims concern the Plaintiff's arrest and subsequent detention, and

therefore, we first consider each of the parties' role in the Plaintiff's arrest.

        a.     The Plaintiff's Claims of False Arrest and Excessive Force.

        1.     Fitzhenry.  Although the Plaintiff has alleged claims

of false arrest against all of the parties, Fitzhenry is the only named party who could

be liable for the Plaintiff's alleged false arrest, and excessive force claims.[12]  We have

_____

    [12]The Plaintiff has alleged that Fitzhenry was "acting in concert with Defendants City of Apple Valley and County of Dakota," see, First Amended Complaint, Docket No. 10, at p. 5 ¶7, when he effected the Plaintiff's arrest. The Defendants do not dispute that Fitzhenry initiated a contact, through his dispatcher, with Dakota County, in order to determine whether the Warrant for the Plaintiff's arrest remained valid, and to that extent Fitzhenry acted in concert with others.  We do not interpret the Plaintiff's Amended Complaint as asserting any conspiracy claim, however, as she has not pled a claim under Title 42 U.S.C. §1985, nor has she pled, with specificity, any conspiracy claim, under Section 1983. See, e.g., Pittman v. Banks, 998 F.2d 1018 at *1 (8th Cir., July 29, 1993)("To state a conspiracy claim under §1983, [the plaintiff] must assert 'specific facts showing "a meeting of [the] minds" among alleged conspirators.'")[Table Decision], quoting Snelling v. Westhoff, 972 F.2d 199, 200-01 (8th Cir. 1992), cert. denied, 506 U.S. 1053 (1993); see also, Smith v. Aldrich, 235 F.3d 1058, 1063 (8th Cir. 2001), citing Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988), for the proposition that a "conspiracy claim requires allegations of specific facts showing a 'meeting of minds' among alleged conspirators."

    In any event, the Plaintiff "is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a §1983 civil conspiracy claim." Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999), citing Villanueva v. McInnis,

(continued...)

already determined that Fitzhenry is not liable in his individual capacity, since no such

claim was alleged, and further, his actions in any official capacity cannot implicate his

employer, the City of Richfield, as that entity cannot be held liable under a

principal/agent, or respondeat superior, theory.   As a result, further analysis of

Fitzhenry's liability, in his individual capacity is unnecessary, but we do so in the

interests of completeness, and in an abundance of caution.[13]

---

(...continued)

723 F.2d 414, 416 (5th Cir. 1984), for the proposition that "it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient * * * [w]ithout a deprivation of a constitutional right or privilege, [the defendant] has no liability under §1983." Stated otherwise, "[t]he gist of the [§1983] cause of action is the deprivation and not the conspiracy." Harrison v. Springdale Water & Sewer Com'n, 780 F.2d 1422, 1430 n. 14 (8th Cir. 1986), quoting Lesser v. Braniff Airways, Inc., 518 F.2d 538, 540 n. 2 (7th Cir. 1975). Since, as we detail in the text of this Report, we find no constitutional deprivation, we do not further examine the issue of any claimed conspiracy.

[13]Following the briefing of the City of Apple Valley, which addressed the failure of the Plaintiff to plead a claim against Fitzhenry in his individual capacity, the Plaintiff filed a Declaration in which she attests that "Fitzhenry is being sued in his individual capacity for his own individual tortuous and per se negligent acts," and that "Sutton is being sued in his individual capacity * * *." Declaration and Certification of Barbara R. Burns, Docket No. 305, at p. 3. Of course, at no time did the Plaintiff amend her Amended Complaint to give notice to Fitzhenry, and Sutton, of any intention on her part to assert individual capacity claims against each of them, and we reject, as pure legal nonsense, that she can amend her Complaint by simply stating that she intended her claims to be what they plainly are not. Nonetheless, we address the issue but without intimating, let alone finding, that the Plaintiff has successfully pled

(continued...)

The Fourth Amendment provides that "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  <u>United States Constitution, Amendment IV</u>.  An essential purpose behind the Fourth Amendment's proscriptions is to impose standards of reasonableness upon the exercise of law enforcement's discretionary powers, so as to safeguard an individual's privacy from an arbitrary invasion by the Government.  See, <u>Delaware v. Prouse</u>, 440 U.S. 648, 653-54 (1979); <u>Marshall v. Barlow's Inc.</u>, 436 U.S. 307, 312 (1978); <u>Camara v. Municipal Court</u>, 387 U.S. 523, 528 (1967).  Therefore, whether a certain action is permissible, under the Fourth Amendment, "is judged by balancing [that action's] intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  <u>Id.</u> at 654.

Pursuant to Minnesota Statutes Section 629.41, a State Court Judge may lawfully issue an Arrest Warrant based upon a defendant's failure to respond to a citation, and the Warrant may be based "upon sworn facts establishing probable cause as set forth in or with the citation and attached to the Complaint."  <u>Rule 6.01, Minnesota Rules of Criminal Procedure, Subdivision 3</u>.  The Warrant, which was

---

[13](...continued)
individual capacity claims against either Fitzhenry or Sutton, for she has not.

submitted by the Defendants, was issued on the basis of the Complaint dated November 18, 1999, and includes a sworn statement of facts, by the issuing officer, that he had viewed the Plaintiff's property, noticed the ordinance violations, and had on multiple occasions given the Plaintiff opportunities to cure the violations. See, Murphy Aff., supra, Exhibit 4. In addition, it is uncontested that the Complaint informed the Plaintiff of her Court appearance. Id.

On August 8, 2001, after her failure to appear for a schedule Pretrial Hearing, a Warrant was issued for her arrest. See, Docket No. 285, at 5; Beitz Aff., supra, Exhibit J. The Warrant was kept active on August 21, 2003, after a file review by a State Court District Judge. See, Docket No. 285, at 5; Beitz Aff., supra, Exhibit K; Exhibit L. The Warrant directs the Sheriff of Dakota County, or any other person authorized by law, to execute the Warrant, and specifically provided that, "in the name of the State of Minnesota you are to apprehend, arrest, and bring the defendant before this court with unnecessary delay * * *." See, Murphy Aff., supra, Exhibit 1. Furthermore, Minnesota Statutes Section 629.30, Subdivision 2(1), provides that a law enforcement official may make an arrest on a valid Warrant.

- 22 -

Here, Fitzhenry discovered the Warrant after a traffic stop and, after confirming

that the Warrant was still active, he arrested the Plaintiff.[14]  See,  Murphy Aff., supra,

_____

[14]The Plaintiff contends that Fitzhenry was mistaken in his traffic stop, because she had stopped at the flashing intersection semaphore.  See, Hiveley Aff., Exhibit A, Docket No. 296-2, at p. 7 of 30.  In contrast, Fitzhenry attests that the Plaintiff's vehicle failed to stop at the semaphore, although he does recall her denying any failure to stop.  See, Fitzhenry Aff., Docket No. 297, at p. 2 of 4 ¶¶4 and 5.  Even if we concluded that Fitzhenry's traffic stop of the Plaintiff was pretextual -- which we expressly do not -- that fact would not invalidate the subsequent arrest of the Plaintiff on a Warrant.  Here the Plaintiff's arrest was pursuant to a Warrant and, under Eighth Circuit authority, the presence of that Warrant is an "intervening circumstance" which dissipates the purportedly unlawful traffic stop that Fitzhenry executed.  See, United States v. Simpson, 439 F.3d 490, 495-96 (8th Cir. 2006) ("Where the discovery of an arrest warrant constitutes the intervening circumstance, 'it is an even more compelling case for the conclusion that the taint of the original illegality is dissipated.'"), quoting United States v. Green, 111 F.3d 515, 522 (7th Cir. 1997), cert. denied, 522 U.S. 973 (1997).

   Moreover, on the Record presented, we have no basis to find that Fitzhenry's traffic stop was purposeful or was flagrant official misconduct.  Fitzhenry has averred, without contradiction, that the semaphore was malfunctioning, and that was the reason for his presence at that location.   The Plaintiff agrees that the light was malfunctioning, see Hiveley Aff., Exhibit A, Docket No. 296-2, at p. 7 of 30, and we have no showing that Fitzhenry committed official misconduct in this respect, or that he was without an articulable suspicion, if not outright probable cause, to believe that a traffic violation had just occurred. See, United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007)("Even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an 'objectively reasonable one.'"), Ballard v. Heineman, 548 F.3d 1132, 1135 (8th Cir. 2008), see also, Whren v. United States, 517 U.S. 806, 810 (1996)("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").  Accordingly,
(continued...)

Exhibit 2;  Fitzhenry Aff., supra at ¶ 6.  Nor can the Plaintiff claim that there was no

probable cause for her arrest.  See, Luckes v. County of Hennepin, 415 F.3d 936 (8th

Cir. 2005)("Because Luckes was named in a valid bench warrant, however, probable

cause for his arrest pursuant to that warrant was established, and his Fourth

Amendment argument is thus without merit."), citing Armstrong v. Squadrito, 152

F.3d 564, 569-70 (7th Cir. 1998); Snyder v. Snyder, 2007 WL 894415 * 8 (D. Minn.

March 21 2007)("When a defendant is named in a valid bench warrant, probable cause

for arrest exists, and any Fourth Amendment argument arising out of that arrest is

without merit."), aff'd 2008 WL 5060630 (D.Minn. December 2, 2008).

We also find that it was not unreasonable for Fitzhenry to rely on the

information that he had received from Dakota County in believing that the Warrant

was still active.  See, Minnesota Statutes Section 629.32 ("A peace officer may

lawfully arrest a person when advised by any other peace officer in the state that a

warrant has been issued for that person."); see also, Stigall v. Madden, 26 F.3d 867,

869 (8th Cir. 1994)("The warrant itself, however, shields [the defendant] from liability

for executing it, unless a reasonably well-trained officer would have known that the

---

[14](...continued)
we conclude, as a matter of law, that the Plaintiff's traffic stop, even if in error, does
not vitiate the legality of her arrest upon a valid Warrant.

arrest was illegal despite the magistrate's authorization."), citing <u>United States v. Leon</u>, 468 U.S. 897, 922 n.23 (1984);  <u>Snyder v. Snyder</u>, supra at 8.

The Plaintiff has alleged that she has had that Warrant quashed at least twice but, as we have noted, she has produced no evidence to support that claim.  The evidence, which has been proffered by the Defendants, refutes the Plaintiff's contention that the Warrant was quashed, for the Record demonstrates, without contradiction, that, in August of 2003, the Warrant was reviewed and kept active. See, <u>Docket No. 285</u>, Exhibit 5; <u>Beitz Aff.</u>, supra, Exhibit K; Exhibit L.  Furthermore, Fitzhenry took extra precaution when he checked to determine whether the Warrant was still active.  See, <u>Murphy Aff.</u>, supra, Exhibit 2.  Only after receiving confirmation, that the Warrant was still active, did Fitzhenry arrest the Plaintiff.  The only knowledge that Fitzhenry, or any other reasonable officer would have had, was that the Warrant was still active.  He had no way of knowing whether the Warrant had been quashed or not and, in any event, it was not unreasonable for Fitzhenry to rely upon Dakota County's confirmation that the Warrant was active.  See, <u>Minnesota Statutes Section 629.32</u>

The Plaintiff has also claimed that Fitzhenry was required to show her the Warrant when she requested him to do so and, given that she was not shown the

Warrant, her arrest was unlawful, but that argument is wholly without merit as an arrest is still lawful "even though the officer does not have the warrant in hand at the time of the arrest." Minnesota Statutes Section 629.32.

Further, the Plaintiff asserts that Fitzhenry employed excessive force when he arrested her. However, the evidence of Record, which relates to that claim, arises from the Plaintiff's deposition testimony, in which she states that Fitzhenry was "verbally abusive," that he grabbed her hands when he took her purse, and that she was handcuffed and caused to suffer various physical and psychological injuries. See, Hiveley Aff., supra, Exhibit A at 30:1-23;  33:25-34:9;  36:3-37:11;  38:3-39:14; 65:17-68:3. Notwithstanding those allegations, the Plaintiff also admits that Fitzhenry did not draw or use his firearm, never struck the Plaintiff, nor made any explicit statements to indicate that he would use excessive force on her in order to effect her arrest. Id., Exhibit A, at 99:19-101:10.

We analyze excessive force claims under the framework applicable to Fourth Amendment seizures. See, McVay ex rel. Estate of McVay v. Sisters of Mercy Health System, 399 F.3d 904, 908 (8th Cir. 2005)("A seizure for Fourth Amendment purposes occurs when a government actor 'by means of physical force or show of authority * * * in some way restrain[s] the liberty of a citizen.'"), citing Graham v. Connor, 490

U.S. 386, 395 n. 10 (1989).   The test to determine whether the force, that was employed in effecting an arrest, was excessive, requires us to consider "whether the amount of force used was objectively reasonable under the particular circumstances." Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001), quoting Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994).

Here, the Plaintiff has pled facts that Fitzhenry used excessive force when he grabbed her purse, and when she was handcuffed.  However, "[n]ot every push or shove by an officer violates the Fourth Amendment," and our Court of Appeals has held that "a de minimis use of force or injury is insufficient to support a finding of a constitutional violation." Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005), citing Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003).  Here, the Plaintiff resisted when Fitzhenry removed her from her car, as well as when Fitzhenry asked for her purse.  See,  Hiveley Aff., supra, Exhibit A at 31:24-32:32:7; Fitzhenry Aff., supra at ¶9.  Fitzhenry then grabbed the Plaintiff's hand, and she relinquished the purse.  See, Hiveley Aff., supra, Exhibit A at 32:3-22.  While the Plaintiff has stated that Fitzhenry's actions "didn't feel good," id. at 32:23-33:2,  Fitzhenry's use of force was de minimis, especially in light of the Plaintiff's resistance to Fitzhenry's lawful attempts to secure her purse.  Id.

Even though the Plaintiff believes that Fitzhenry used excessive force, his actions cannot be considered objectively unreasonable under the particular circumstances at play at the time of her arrest. Fitzhenry was dealing with a verbally resistive individual who also resisted his attempts to secure her purse -- an effort plainly consistent with officer safety. When the Plaintiff resisted, it was reasonable for Fitzhenry to remove the purse with minimal force, and that minimal amount of force, as a matter of law, did not rise to the level of excessive force. See, Benigni v. Smith, 121 Fed.Appx. 164, 164-66 (8th Cir. 2005), cert. denied, 545 U.S. 1118 (2005)(no excessive force used when an officer twice pushed the arrestee in the back, without causing an injury); Winters v. Adams, supra at 764-65 (8th Cir. 2001)(finding that an officer did not use excessive force when he struck an unrestrained arrestee in the eye with a closed fist after the arrestee resisted the officer's attempt to remove the arrestee from his car); Curd v. City Court of Judsonia, Arkansas, 141 F.3d 839, 841 (8th Cir. 1998)( "Even if seizing [Plaintiff's] arm and turning her body was unnecessary to effect the arrest, we cannot conclude that this limited amount of force was objectively unreasonable.").

The Plaintiff has also alleged that she was injured when Fitzhenry handcuffed her. The application of handcuffs must cause more than minor injuries in order to

amount to excessive force.   See, <u>Crumley v. City of St. Paul</u>, supra at 1008.
"[A]llegations of pain as a result of being handcuffed, without some evidence of more
permanent injury," are insufficient to support a claim for excessive force."  <u>Hanig v.
Lee</u>, 415 F.3d 822, 824 (8th Cir. 2005), citing <u>Foster v. Metropolitan Airports
Commission</u>, 914 F.2d 1076, 1082 (8th Cir. 1990). Although the Plaintiff contends that
she suffered bruises from being handcuffed, she has offered no medical evidence or
records to support her claim.[15]

In a claim for excessive force, that is based upon the use of handcuffs, there
must be an actual, non-minor injury, see, <u>Hanig v. Lee</u>, supra at 824; <u>Crumley v. City
of St. Paul</u>, supra at 1008, and allegations of pain or injury, without proof by medical
records or other evidence, cannot prove an injury.   See, <u>Foster v. Metropolitan
Airports Commission</u>, supra at 1082 (medical records required for the plaintiff to
prove claim of nerve damage from being handcuffed too tightly); <u>Crumley v. City of
St. Paul</u>, supra at 1008 (concluding that the plaintiff's claim, that her hand bled from

---

[15]The Plaintiff has alleged other injuries which, she claims, were caused by a whole
series of events, rather then just her contact with Fitzhenry.  The Plaintiff claims that
all the Defendants are responsible for her sudden onset headaches, a sleep disorder,
and high blood pressure.  See, <u>Hively Aff.</u>, supra, Exhibit A at 36:3-39:14. However,
these allegations are conclusory, and not supported by clinical records, findings, or
medical expertise.

being handcuffed too tightly, failed without medical records indicating a long term injury); <u>Montes v. Ransom,</u> 219 Fed.Appx. 378, 381 (5th Cir. 2007), cert. denied,   ---U.S. ---, 128 S.Ct. 705 (2007)("[A]dmissible medical evidence establishing some injury is required to satisfy the injury requirement of an excessive force claim based on the application of handcuffs."); see also,  <u>McDonald v. Lewis,</u> 2006 WL 2088160 *4 (D. Minn., July 25, 2006)(claims of a dislocated jaw and a bruised kidney were not accepted because they were not supported by medical records); <u>Oliver v. City of Minneapolis,</u> 2005 WL 2406035 * 6 (D. Minn., September 27, 2005)(The plaintiff's claimed permanent injuries were deemed temporary, minimal injuries, because they were not supported by medical records); <u>Thomsen v. Ross,</u> 368 F. Supp.2d 961 (D. Minn,. May 11, 2005)("Even assuming [the defendant] engaged in the precise acts claimed during plaintiff's deposition, plaintiff has not shown that the claimed actions caused his injuries," and "[o]ne can easily imagine an arm being pulled and a person being thrown to the floor, but those imaginings do not at all equate to losing a tooth or breaking a bone," for the "injuries are unexplained in the absence of any evidence of causation.").

Accordingly, given the foregoing, we conclude that the Defendants are entitled to Summary Judgment as to the Plaintiff's illegal arrest, and excessive use of force claims.

        b.    <u>The Plaintiff's Claims of False Imprisonment against Fitzhenry and Hennepin County</u>.

The Plaintiff has alleged that Fitzhenry is liable for false imprisonment since her attorney had the Arrest Warrant quashed. Although false imprisonment is generally a State tort, plaintiffs have been allowed to bring the claim under Section 1983 when the plaintiff alleges a denial of constitutional rights. See, <u>Snyder v. Snyder</u>, supra at * 9, citing <u>Baker v. McCollan</u>, 443 U.S. 137, 142-43 (1979). "However, where a claim for false arrest is barred because officers acted with probable cause, "no false imprisonment claim lies."' <u>Id.</u>, quoting <u>Anderson v. Franklin County, Mo.</u>, 192 F.3d 1125, 1132 (8th Cir. 1999); see, <u>Brodnicki v. City of Omaha</u>, 75 F.3d 1261, 1266 (8th Cir. 1996), cert. denied, 519 U.S. 867 (1996) ("Because we conclude that the officers had probable cause to arrest Brodnicki, he has no basis for his 1983 claim against them."). Here, we have concluded that Fitzhenry had probable cause to arrest the Plaintiff, based on the active Arrest Warrant from

Dakota County, and therefore, the Plaintiff's claims for false imprisonment against

Fitzhenry, or for that matter against any of the Defendants, necessarily fails.[16]

       3.    The Plaintiff's Monell Claims.

         A.    Standard of Review.  A County or municipality can be liable

under Section 1983, if a plaintiff can prove that it has adopted some policy, custom,

or practice, that caused a violation of the plaintiff's Federal constitutional rights.  See,

City of Canton v. Harris, 489 U.S. 378, 386-87 (1989); see also, Lund v. Hennepin

County, 427 F.3d 1123, 1125 (8th Cir. 2005); Angarita v. St. Louis County, 981 F.2d

1537, 1546 (8th Cir. 1992)("A municipality may be held liable under Section 1983

---

[16]Given our conclusion, that Fitzhenry committed no constitutional violation as to the Plaintiff, we need not consider Fitzhenry's assertion that he is entitled to qualified immunity as to those alleged violations.  In determining whether an individual is entitled to qualified immunity, "courts must consider whether, '[t]aken in the light most favorable to the party asserting the injury, * * * the facts alleged show the officer's conduct violated a constitutional right.'"  Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004), quoting  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Since we have already concluded that Fitzhenry did not violate any of the Plaintiff's constitutional rights, in regard to the Plaintiff's false arrest, excessive force, and false imprisonment claims, the Plaintiff has failed to satisfy the first step of the inquiry.  "If the answer to [whether there is a constitutional violation] is no, courts do not delve further into the qualified immunity inquiry," and "the defendant is entitled to qualified immunity[.]"  Davis v. Hall, supra at 712;  see also, Wilson v. City of Des Moines, IA, 293 F.3d 447, 450 (8th Cir. 2002)("If there is no constitutional violation, then the grant of summary judgment based on qualified immunity is appropriate.").  Accordingly, Fitzhenry is entitled to qualified immunity as the Plaintiff's claims pertain to him.

only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws."); <u>Williams v. Little Rock Municipal Water Works</u>, 21 F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees"), quoting <u>Monell v. Dept. of Social Services</u>, supra at 690.

A plaintiff is not required to specifically plead the existence of an unconstitutional policy or custom, see, <u>Crumpley-Patterson v. Trinity Lutheran Hospital</u>, 388 F.3d 588, 591 (8th Cir. 2004), citing <u>Doe v. School Dist. of Norfolk</u>, 340 F.3d 605, 614 (8th Cir. 2003), but a failure to include "any allegations, reference, or language by which one could begin to draw an inference that the conduct complained of * * * resulted from an unconstitutional policy or custom," will render a Complaint defective. <u>Id.</u> Moreover, "a single incident is not sufficient to establish * * * a policy." <u>Ouzts v. Cummings</u>, 825 F.2d 1276, 1278 (8th Cir. 1987); see also, <u>Mann v. Yarnell</u>, 497 F.3d 822, 828 (8th Cir. 2007); <u>Davidson v. City of Minneapolis, Minnesota</u>, 490 F.3d 648, 659 (8th Cir. 2007), citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985).

B.    <u>Legal Analysis</u>.    The Plaintiff has raised various

constitutional claims against the Cities of Apple Valley, and Richfield, and against the

Counties of Hennepin and Dakota.  We proceed to those claims.

1.    <u>The Claims against Apple Valley and Richfield</u>.  The

Plaintiff has alleged that Apple Valley, and Richfield, acted in concert with the other

Defendants to violate her constitutional rights.  As noted previously, we find no

legally recognizable conspiracy claim, whether related, as the Plaintiff alleges, to the

creation of a false Warrant for the Plaintiff's arrest, or otherwise.  In conjunction with

that allegation, the Plaintiff claims that Apple Valley has subjected her to years of

harassment, and malicious prosecution.[17]    The Constitution does not mention

---

[17]In <u>Burns v. City of Apple Valley</u>, Civ. No. 00-2638 (JRT/FLN), the Plaintiff also
claimed to unconstitutional conduct, by Apple Valley, and its agents and employees,
dating back to June of 1992, and extending through January 1, 2001-- the date on
which she filed her Amended Complaint.  <u>Id., Amended Complaint, Docket No. 6</u>; see
also, <u>Burns v. City of Apple Valley</u>, supra, 2001 WL 670833 at *1 ("In her complaint,
plaintiff chronicles a series of confrontations between her and various employees of
the City of Apple Valley stretching over an eight-year period," and "[b]eginning in
June 1992 * * *.").    Her Section 1983 claims, which were pinioned on those
allegations against Apple Valley, and others, were rejected in a Report and
Recommendation dated May 11, 2001, <u>id., Docket No. 78</u>, which was adopted by the
District Court in an Order dated  September 25, 2001.  <u>Id., Docket No. 95</u>.  Those
rulings were affirmed throughout the Plaintiff's appeals, and are final Orders of this
Court.  See, <u>Burns v. City of Apple Valley</u>, 30 Fed.Appx. 670 (8th Cir. 2002), cert.
denied, 537 U.S. 1051 (2002).  As a consequence, those rulings are binding upon the
(continued...)

- 34 -

malicious prosecution, nor has the Plaintiff cited any cognizable basis for a Section 1983 malicious prosecution action.  See, <u>Kurtz v. City of Shrewsbury</u>, 245 F.3d 753, 758 (8th Cir. 2001).   "Moreover, this court has uniformly held that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury." <u>Id.</u>, citing <u>Gunderson v. Schlueter</u>, 904 F.2d 407, 409 (8th Cir. 1990); see also, <u>Kohl v. Casson</u>, 5 F.3d 1141, 1145 (8th Cir. 1993)(allegations of malicious prosecution without more does not state a claim under Section 1983); <u>McNeese v. Mountain Home, Ark.</u>, 993 F.2d 1359, 1361 (8th Cir. 1993)(malicious prosecution claim not cognizable under Section 1983 if it does not involve a constitutional injury).  Furthermore, the Plaintiff's allegations do not identify a policy or custom, which was promulgated by Apple Valley or Richfield, and which served as the driving force behind the claimed constitutional violations.  Accordingly, the Plaintiff's claims for malicious prosecution are without merit.

In Count Four of the Plaintiff's Amended Complaint, she alleges that Apple Valley and Richfield were negligent in their training and supervision of Fitzhenry.  See, <u>Amended Complaint</u>, at 9.   Failure to properly train and supervise municipal

---

[17](...continued)
Plaintiff, and we do not further consider those dated, and fully resolved, claims.  See, <u>Footnote 3</u>, supra.

employees can result in a finding of liability under Section 1983, but "'[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [Section] 1983.'" Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1094 (8th Cir. 2004), quoting City of Canton v. Harris, supra at 389 [citations omitted].  As explained by our Court of Appeals:

> A city * * * may be liable for deficient policies regarding hiring and training police officers where (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the "failure to train reflects a deliberate or conscious choice by a municipality," * * * and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury. * * * It is necessary to show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." * * * In other words, the plaintiff must demonstrate that the city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights."

Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)[citations omitted].

- 36 -

Similarly, a supervisor "may be held individually liable * * * if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." <u>Vaughn v. Greene County, Ark.</u>, 438 F.3d 845, 851 (8th Cir. 2006), quoting <u>Wever v. Lincoln County, Neb.</u>, 388 F.3d 601, 606 (8th Cir. 2004).

On this Record, we find that the Plaintiff cannot sustain a failure to train claim against Apple Valley and Richfield, by her vague and conclusory allegations that Apple Valley and Richfield poorly trained or supervised Fitzhenry. Apple Valley and Richfield have provided evidence that Fitzhenry has had more than sufficient training to refute the Plaintiff's allegations. See, <u>Fitzhenry Aff.</u>, supra at ¶2. Moreover, we have already determined that Fitzhenry committed no constitutional violation, as alleged by the Plaintiff, which amply disproves her failure to train claim.[18]

Furthermore, the basis for this suit revolves around the incident on November 10, 2003, and that single incident is not sufficient to establish a policy or custom. Therefore, the Plaintiff has failed to show any constitutional violation, much less a policy or custom, which had been promulgated by either Apple Valley, or Richfield,

---

[18]The Apple Valley Defendants also argue that they are protected by statutory immunity from the Plaintiff's claims of failure to train, or discipline. See, <u>Apple Valley Memorandum in Support</u>, supra at 25-28. Since we have concluded that the Plaintiff has failed to raise sufficient claims beyond the conclusory nature of Count Four, we find it unnecessary to further address that argument.

and which prompted that violation. Accordingly, Apple Valley, and Richfield, should

be granted Summary Judgment on the Plaintiff's <u>Monell</u> claims.

                    2.     <u>The Plaintiff's Claims Against Hennepin County</u>. The

Plaintiff has alleged claims of false imprisonment, and a violation of her Fifth

Amendment rights, and her Substantive Due Process rights, against Hennepin

County.[19] According to the Plaintiff, Hennepin County falsely imprisoned her based

upon a quashed Warrant. However, we have already determined that Fitzhenry had

probable cause to arrest the Plaintiff, and resultantly, there can be no cognizable claim

for false imprisonment against any Defendant, including Hennepin County. See,

<u>Brodnicki v. City of Omaha</u>, supra at 1266; <u>Snyder v. Snyder</u>, supra at * 9.

Furthermore, the Plaintiff has not identified any Hennepin County policy, or custom,

which violated her Fourth Amendment rights.

---

[19]The Plaintiff has also alleged that her Right to Equal Protection was violated. See,
<u>Amended Complaint</u>, supra at 9. The Fourteenth Amendment's Equal Protection
Clause requires Government actors to treat persons, who are similarly situated, alike.
See, <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985); see
also, <u>Creason v. City of Washington</u>, 435 F.3d 820, 823 (8th Cir. 2006).

      However, the Plaintiff has not alleged that Hennepin County's actions were in
any way based on her membership in a protected class, or that Hennepin County
treated similarly situated individuals differently. Accordingly, the Plaintiff's Equal
Protection claim is entirely without merit.

The Plaintiff contends that Hennepin County violated her Fifth Amendment right against self incrimination, when she was asked routine booking questions at the ADC. Of course, once a suspect is in police custody, and is subjected to interrogation, she must be advised of her constitutional right to remain silent, and to be represented by legal counsel during the course of the questioning. See, Miranda v. Arizona, 384 U.S. 436, 473 (1966). Police officers are not required, however, to administer Miranda warnings to everyone whom they question. See, e.g., Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Rather, Miranda warnings are only required for official interrogations. See, United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985), quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966); Berkemer v. McCarty, 486 U.S. 420, 428-29 (1984). "'[E]ither express questioning or its functional equivalent' may constitute 'interrogation.'" United States v. Cordova, 990 F.2d 1035, 1037 (8th Cir. 1993), cert. denied, 510 U.S. 870 (1993), quoting Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

The Plaintiff assert that the staff at the ADC subjected her to physical and mental torture, as well as coercion, in an attempt to force her to waive her right to remain silent so as to incriminate herself. See, Supplemental Motion, supra at ¶ 44. As alleged by the Plaintiff, the ADC staff attempted, through general conversation,

to entice her to incriminate herself.  See, Bietz Aff., supra at 133:13-21.  The Plaintiff asserts that the ADC staff asked her questions in an effort "to get my name, my address, phone number, you know, Social -- I think they asked me for my Social Security number." Id. at 134:5-9.  According to the Plaintiff, after she refused to provide that information, the ADC staff became abusive, and threatened her.  Id. at 134:20-25.  However, as a general proposition, "mere verbal threats made by a state-actor do not constitute a Section 1983 claim." Hopson v. Fredrickson, 961 F.2d 1374, 1378 (8th Cir. 1992), citing Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); see also, King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir. 1997).

In contrast to the Plaintiff's allegations, which are entirely conclusory, the Defendants have provided records to establish that the Plaintiff refused to answer questions by claiming an entitlement to a Miranda warning.  See, Larson Aff., supra, Exhibit E.  As disclosed by the Record, the Plaintiff repeatedly asserted that she needed to have her Miranda rights read to her, and to have access to her lawyer.  Id. Despite the Plaintiff's assertions, however, the rule in Miranda has no application to routine booking questions.  See, United States v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996)("It is well settled that routine biographical data is exempted from Miranda's coverage."); United States v. No. 91-2349, 952 F.2d 1034, 1036 (8th Cir.

- 40 -

1992), cert. denied 503 U.S. 1011 (1992)(statements of accused, voluntarily made while he was subject to routine booking questions, were not suppressible); United States v. Reyes, 908 F.2d 281, 287-88 (8th Cir. 1990), cert. denied, 499 U.S. 908 (1991)(Miranda advisory not required for "routine booking questions").

As our Court of Appeals has explained:

> It is well-settled that routine biographical data is exempted from Miranda's coverage. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990); United States v. Horton, 873 F.2d 180, 181 n. 2 (8th Cir. 1989); United States v. McLaughlin, 777 F.2d 388, 391-92 (8th Cir. 1985). * * * A request for routine information necessary for basic identification purposes is not interrogation under Miranda, even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the question be subject to scrutiny. McLaughlin, 777 F.2d at 391-92. See, Muniz, 496 U.S. at 602 n. 14, 110 S.Ct. at 2650 n. 14 (during booking procedures, government may not ask questions "that are designed to elicit incriminatory admissions").

U.S. v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996).

Furthermore "the general rule is that a person has no claim for civil liability based on the Fifth Amendment's guarantee against compelled self-incrimination unless compelled statements are admitted against him in a criminal case." Entzi v. Redmann, 485 F.3d 998, 1002 (8th Cir. 2007), cert. denied, --- U.S. ---, 128 S.Ct. 1714 (2008),

citing Chavez v. Martinez, 538 U.S. 760, 767 (2003).  Here, the Plaintiff has not

alleged, let alone demonstrated, that any of the information, which was revealed

through the routine booking questions, was used against her in a criminal case.  Lastly,

the Plaintiff has not pointed to a policy, or custom, promulgated by Hennepin County

which was employed to deprive individuals of their Fifth Amendment rights.

Therefore, we find that the Plaintiff's Fifth Amendment claim also to be without

merit.

Next, the Plaintiff alleges that she was denied her Substantive Due Process

rights due to the length of her detention at ADC.  "'To establish a substantive due

process claim, [a plaintiff] must show that the government action was truly irrational,

that is, something more than * * * arbitrary, capricious, or in violation of state law.'"

Graning v. Sherburne County, 172 F.3d 611, 617 (8th Cir. 1999), quoting Anderson

v. Douglas County, 4 F.3d 574, 577 (8th Cir. 1993), cert. denied, 510 U.S. 1113

(1994).  Indeed, the government action in question must shock the conscience, or be

otherwise offensive to notions of fairness and human dignity.  See, Moran v. Clarke,

296 F.3d 638, 647 (8th Cir. 2002);  Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir.

1998).  The Supreme Court has held that, to meet the standard for a substantive due

process violation, the conduct must be "intended to injure in some way unjustifiable

by any governmental interest." <u>Norris v. Engels</u>, 494 F.3d 634, 638 (8th Cir. 2007), cert. denied, --- U.S. ---, 128 S.Ct. 1655 (2008), quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n. 8 (1998).

Courts have found that the Due Process clause guards against prolonged detentions, without a Hearing, following an arrest pursuant to a valid Warrant. See, <u>Davis v. Hall</u>, 375 F.3d 703, 714 (8th Cir. 2004), citing <u>Armstrong v. Squadrito</u>, 152 F.3d 564, 576 (7th Cir. 1998). However, under the circumstances presented here, we are unable to find that Hennepin County's actions were so egregious as to violate Substantive Due Process, when the Record establishes that the Plaintiff was arrested, pursuant to a facially valid Warrant, was placed alone in a holding cell only after she refused to answer routine booking questions, and, once the booking process was completed, she was released on the proper payment of her bail. See, <u>Larson Aff.</u>, supra at Exhibit E.

All told, the Plaintiff spent over thirteen (13) hours at the ADC, with some delay caused by her own refusal to cooperate with the ADC staff. Under any rational view, it is plainly apparent, as a matter of law, that the Plaintiff's length of detention did not violate her Substantive Due Process rights. See, e.g., <u>Russell v. Hennepin County</u>, 420 F.3d 841, 850 (8th Cir. 2005)(arrestee's six (6) days of detention, after a

Judge ordered his release, no constitutional violation); Lund v. Hennepin County, 427 F.3d 1123, 1124 (8th Cir. 2005)(twelve (12) hour delay in releasing arrestee, after Judge ordered his release, no constitutional violation);Golberg v. Hennepin County, 417 F.3d 808, 810 (8th Cir. 2005)(thirty-two (32) hours of detention, including ten (10) hours after the posting of bail, not a violation of constitutional rights); Oertwig v. Hennepin County, 162 Fed.Appx. 683, 683-84 (8th Cir. 2006)(sixteen (16) hours of detention not a constitutional violation); Murphy v. County of Hennepin, 162 Fed.Appx. 677 (8th Cir. 2006)(fourteen (14) hour period of detention not constitutionally violative); Heryla v. Hennepin County, 162 Fed.Appx. 676, 676-77 (8th Cir. 2006)(twenty-one-and-a-half (21½) hours of detention not unconstitutional); Killingham v. County of Hennepin, 152 Fed.Appx. 554, 556 (8th Cir. 2005)(finding that the arrestee's eighteen (18) hour detention did not violate his constitutional rights); Luckes v. County of Hennepin, 415 F.3d 936, 938-40 (8th Cir. 2005) (concluding that a twenty four (24) hour detention did shock the conscience so as to violate the Substantive Due Process rights).

The Plaintiff also contends that the loss and damage to her property violates the Fourth Amendment.[20]   Although the Plaintiff brings this claim under the Fourth Amendment, it has been long recognized that "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 371 (1987), citing Illinois v. Lafayette, 462 U.S. 640, 643 (1983), and South Dakota v. Opperman, 428 U.S. 364, 367-76 (1976).  As a result, the Plaintiff's claim for property loss, and damage, is more appropriately considered under the Fourteenth Amendment.  "When a deprivation of property is caused by a random and unauthorized act of a state employee, 'it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.'" Reese v. Kennedy, 865 F.2d 186, 187 (8th Cir. 1989), quoting Parratt v. Taylor, 451 U.S. 527, 541 (1981).

Here, there is nothing in the Record to demonstrate that the Plaintiff's property was taken, or damaged, intentionally or with reckless disregard for the Plaintiff's rights, but "even an unauthorized intentional deprivation of property by a state official does not violate due process requirements if a meaningful post-deprivation remedy is

---

[20]Hennepin denies that there has been any loss or damage to the Plaintiff's property, but we are obligated to consider the claim further, as the Plaintiff alleges that damage or loss occurred.

- 45 -

available." Hubenthal v. Winona County, 751 F.2d 243, 246 (8th Cir. 1984), citing

Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also, Allen v. City of Kinloch, 763

F.2d 335, 336-37 (8th Cir. 1985), cert. denied, 474 U.S. 946 (1985)("The Supreme

Court has held that, where a random and unauthorized act by a state employee results

in a tortious taking of private property, due process is satisfied if state tort law

provides a meaningful post-deprivation remedy.").

Under the circumstances here, the Plaintiff had an adequate post-deprivation

remedy, for the loss or damage of her personal property, through Minnesota Statutes

Section 466.02.  Section 466.02 provides that "every municipality is subject to

liability for its torts and those of its officers, employees and agents acting within the

scope of their employment or duties whether arising out of a governmental or

proprietary function."  The Plaintiff has not pursued her remedies under Section

466.02, and therefore, her claimed denial of her Substantive Due Process rights is

wholly without merit.  See, Hubenthal v. Winona County, supra at 246 (plaintiff's

Due Process claim dismissed because Minnesota Statutes Section 466.02 provided

him with an adequate remedy for alleged loss of property); Kontos v. Wheeler, 29

F.3d 627, 1994 WL 319290 * 1 (8th Cir., July 6, 1994)[Table Decision]("[T]he

gravamen of plaintiff's complaint is that he was deprived of property without due

process of law," but "[i]t is fatal to this claim that Minnesota provides an adequate state post-deprivation remedy for loss of property."); <u>Randle v. City of Minneapolis Police Dept.</u>, 2007 WL 2580568 at *9 (D. Minn., September 5, 2007)("The remedy provided by the [Minnesota] State Statute [466.02] constitutes an adequate post-deprivation remedy for the allegedly wrongful destruction and loss of the Plaintiff's property, and therefore, he cannot maintain a Federal civil rights action based on an alleged denial of Due Process."). As a consequence, the Plaintiff has failed to show that a constitutional violation, much less a policy or custom promulgated by Hennepin County, violated her Substantive Due Process rights.

Lastly, the Plaintiff has raised a failure to train and to discipline as to Sutton and Sergeant Behrens ("Behrens"). As we have already concluded, with respect to the Plaintiff's failure to train claims against Apple Valley, and Richfield, the Plaintiff cannot support her claims with vague and conclusory allegations that Sutton and Behrens were improperly trained. Therefore, the Plaintiff's failure to train claim against Hennepin is without merit, and the Defendants are entitled to Summary Judgment as to that claim.

3.    <u>The Plaintiff's Claims Against Dakota County</u>. The only cognizable claim against Dakota County is the Plaintiff's allegation that Dakota's

staff incorrectly informed the Richfield Police Department that the Plaintiff's Warrant was still active.  Although the Plaintiff has raised other claims against Dakota, there is no logical link between Dakota, and the Plaintiff's factual allegations.[21]  Simply stated, there were no Dakota County employees who were involved in her arrest, in her detainment, or in the release of her arrest information.

The Plaintiff's only claim is that Dakota County erred when it informed the Richfield Police Department that the Plaintiff's Warrant remained active. We have already concluded, however, that the Plaintiff's Warrant was valid, and active, given the undisputed evidence before us, and therefore, the Plaintiff's subsequent arrest, and detention, were not constitutionally deficient.  Given her failure to appear for a scheduled Pretrial Hearing, the Court issued a Warrant for the Plaintiff's arrest.  See, Docket No. 285, at 5; Beitz Aff., supra, Exhibit J.  Thereafter, the Warrant was kept active, on August 21, 2003, after a file review by a State Court District Judge.  See, Docket No. 285, at 5; Beitz Aff., supra, Exhibit K; Exhibit L.  Notwithstanding, the

---

[21]For example, Dakota County has produced evidence, which has not been controverted, that the Office of the Dakota County Sheriff "neither exercises nor possesses supervisory powers or authority over the City of Apple Valley, the City of Richfield, or the County of Hennepin, or the officers or employees of these municipalities."  See, Affidavit of Don Gudmundson ("Gudmundson Aff."), Docket No. 282, at ¶2.

Plaintiff's surmise to the contrary, Dakota did not err when it informed Fitzhenry that the Plaintiff's Warrant remained active.  In addition, the Plaintiff has failed to identify any Dakota County policy, or custom, which resulted in a violation of her constitutional rights, nor could the single incident, which she relies upon, establish a policy or custom.  See,  Ouzts v. Cummings, supra at 1278; Mann v. Yarnell, supra at 828; Davidson v. City of Minneapolis, Minnesota, supra at 659.   Accordingly, the Plaintiff's claims against Dakota County should be dismissed.

    4. The State Law Claims as to All Defendants.  The Plaintiff has also alleged four (4) State law claims; namely, Count Four, which alleges negligence, Count Five which alleges an assault and battery, Count Six, which alleges malicious prosecution, and Count Seven, which asserts a violation of the Minnesota Government Data Practices Act.  As our Court of Appeals recently explained, in Gilson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006):

> Under 28 U.S.C. §1367(c)(3), a court may "decline to exercise supplemental jurisdiction over a claim * * * [if] the district court has dismissed all claims over which it has original jurisdiction."   Congress unambiguously gave district courts discretion in 28 U.S.C. §1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed, and there is no basis to find an abuse of discretion here. See Labickas v. Arkansas State University,

78 F.3d 333, 334 (8th Cir. 1996); McLaurin v. Prater, CO-1,
30 F.3d 982, 985 (8th Cir. 1994).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."  Barstad v. Murray County, 420 F.3d 880, 888 (8th Cir. 2005), quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988).

Here, we have found no violation of the Plaintiff's constitutional rights under Federal law, and we have recommended the entry of Summary Judgment, in favor of all of the Defendants, as to those Federal claims.   As a consequence, we further recommend that the District Court decline to exercise supplemental jurisdiction over the Plaintiff's purely State law claims.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Defendant Dakota County's Motion for Summary Judgment [Docket No. 275] be GRANTED.

2.      That the Defendants Hennepin County and Steven Sutton's Motion for Summary Judgment [Docket No. 278] be GRANTED.

3.      That the Defendants City of Apple Valley, City of Richfield, City of Richfield's Police Department and Thomas Fitzhenry's Motion for Summary Judgment [Docket No. 293] be GRANTED.

4.      That the Plaintiff's Motion for Summary Judgment [Docket No. 314] be DENIED.


Dated:  February 4, 2009                  *s/Raymond L. Erickson*
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 23, 2009,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to

comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 23, 2009,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.